IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| EDDIE R. RHINES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil No. 2020-68 |
| EDDIE WAYNE JACKSON, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

In 2019, Eddie Rhines and Eddie Jackson—both of Tennessee, business associates, and friends for over 40 years—decided to go into the restaurant business together on St. Thomas, U.S. Virgin Islands.  In 2020, when it became apparent that the joint venture was not going to work out as planned, they agreed that Jackson would buy out Rhines' interest.  Rhines alleges Jackson breached that agreement and on August 3, 2020, Rhines sued Jackson in this Court, alleging diversity of citizenship.  Jackson challenges the existence of diversity.

### I.   BACKGROUND

In Rhines' original complaint, he named Jackson and corporate defendant St. Thomas Recreation, LLC d/b/a Thirteen Restaurant, an entity formed on St. Thomas.  V. Compl. [ECF 1] ¶¶ 2-5.  Rhines alleged subject matter jurisdiction based on diversity of citizenship.  *Id.* ¶ 1.[1]

Defendants jointly moved to dismiss on October 5, 2020, arguing that Rhines' allegations regarding the citizenship of the parties were facially deficient.  [ECF 11] at 3-5.  Defendants also argued that complete diversity did not in fact exist.  *Id.* at 5-7.  On August 13, 2021, Rhines filed

---

[1] In that complaint, Rhines failed to properly allege his own citizenship, stating only that he was a "resident" of St. Thomas, U.S. Virgin Islands.  [ECF 1] ¶ 3.

a First Amended Complaint ("FAC"), this time only against Jackson. FAC [ECF 46]; *see also* [ECF 47]. In the FAC, Rhines again alleges he "is, at all times pertinent, a resident of St. Thomas." [ECF 46] ¶ 3. Rhines alleges Jackson is "a domiciliary of the state of Tennessee." *Id.* ¶ 4.

On August 24, 2021, upon the parties' consent, the District Court referred the case to the undersigned for all purposes. [ECF 54]. Now before the Court is Jackson's September 7, 2021 "Motion to Dismiss the First Amended Complaint" under Federal Rule of Civil Procedure 12(b)(1) and Local Rule of Civil Procedure 12.1. [ECF 55]. Rhines filed an opposition. [ECF 58]. On December 17, 2021, the Court held an evidentiary hearing at which time the Court heard testimony from Eddie Rhines, Eddie Jackson, and one of their employees, Phillip "Tully" Wilson.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required," but that a party may assert the defense of lack of subject matter jurisdiction by motion. Where a party seeks to dismiss an action for lack of jurisdiction, Rule 12(b)(1) requires a court to accept as true all material factual allegations set forth in the complaint and construe those facts in favor of the nonmoving party. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

Rule 12(b)(1) movants may either assert a facial attack against the complaint or "question the existence of subject matter jurisdiction in fact, apart from the pleadings." *Doe v. Goldstein's Deli*, 82 F. App'x 773, 775 (3d Cir. 2003) (citing *Mortensen v. First Fed. Sav. Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "While the facial attack offers the plaintiff the safeguard of requiring the court to consider the allegations of the complaint as true, the factual attack allows the court to 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* Thus, in assessing whether it has jurisdiction in the latter case, "[t]he court may consider . . .

Rhines v. Jackson
Civil No. 2020-68
Page 3

evidence outside of the pleadings." *Doe v. Goldstein's Deli*, 82 F. App'x at 775 (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). However, "[t]he plaintiff always bears the burden of convincing the court, by a preponderance of the evidence, that the court has jurisdiction." *Doe v. Goldstein's Deli*, 82 F. App'x at 775.

The court's subject matter jurisdiction may be based on diversity of citizenship, which the United States Court of Appeals for the Third Circuit defines as follows: "Citizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1971)). "Thus, domicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). For purposes of diversity jurisdiction, "an individual may only have one domicile, and thus may only be a citizen of one state." *Witasick v. Hambrecht*, 2013 WL 1222680, at *2 (D.N.J. Mar. 25, 2013) (citing *Williamson v. Osenton*, 232 U.S. 619, 624-25 (1914)).

To determine a party's domicile or citizenship, the court assesses "the relevant facts at the time the complaint was filed." *Washington v. Hovensa LLC*, 652 F.3d at 344. For example, the court may consider "'declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.'" *McCann v. Newman Irrevocable Tr.*, 458 F.3d at 286 (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972)). "Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *McCann v. Newman Irrevocable Tr.*, 458 F.3d at 286 (citing 13B Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Federal Practice and Procedure § 3612 (3d ed. 2005)). In other words, an individual's domicile is "the center of [his] business, domestic, social and civic life." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2008).

Further,

> [a]n individual can change his domicile instantly. To do so, two things are required: "[h]e must take up residence at the new domicile, and he must intend to remain there." *Krasnov,* 465 F.2d 1298 at 1300. But "[a] domicile once acquired is presumed to continue until it is shown to have changed." *Mitchell v. United States*, 21 Wall. 350, 88 U.S. 350, 353, 22 L.Ed. 584 (1874); *Korn v. Korn*, 398 F.2d 689, 691 n.4 (3d. Cir. 1968) (quoting *Mitchell* []). This principle gives rise to a presumption favoring an established domicile over a new one.

*McCann v. Newman Irrevocable Tr.*, 458 F.3d at 286-87 (alteration in original). Proof by a preponderance of the evidence is required to establish a change in domicile. *Id*. at 289. Finally, "[i]f there is a dispute of material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." *Id*. at 290.

### III. DISCUSSION

Jackson moves to dismiss the FAC on the grounds that complete diversity is lacking; he contends that both he and Rhines are "residents of Tennessee." [ECF 55] at 1. Jackson seeks either dismissal of the case or an opportunity to conduct jurisdictional discovery. *Id.* at 2. Rhines counters that the evidence already on the record supports his contention that he is domiciled on St. Thomas and that, therefore, the requirements for diversity jurisdiction have been satisfied. [ECF 58] at 6.

Rhines conflates residency with citizenship in both the original complaint and the FAC.[2] Assuming that he could cure that pleading deficiency with an amendment—something he

---

[2] *Compare* V. Compl. [ECF 1] ¶ 3, *with* FAC [ECF 46] ¶ 3.

neglected to do when filing the FAC—such an amendment would not resolve the issue. Because it is undisputed that Rhines has ties to both Tennessee and St. Thomas,[3] the Court must look at the evidence currently before it to determine Rhines' domicile at the time the original complaint was filed.

Regarding his ties to Tennessee, Rhines has long owned a home there and he pays property taxes in Tennessee.[4] He avers he has "no intention" of selling that property.[5] Rhines testified that he owns three cars and a motorcycle in Tennessee, and that he maintains a number of personal and business bank accounts in that State. In addition, Rhines maintains a Tennessee phone number.[6] Further, Rhines testified that he filed his income tax returns for 2019 and 2020 in Tennessee,[7] that he has a Tennessee driver's license, and that—as of December 2021—he was still a registered voter in Tennessee. Moreover, according to a document from the Tennessee Division of Business Services, and as confirmed by Rhines, he established an LLC in Tennessee in June of 2021 with its principal address listed as Rhines' Whites Creek, Tennessee address. Further, the document lists Rhines, at the same Tennessee address, as the resident agent.[8]

---

[3] Rhines testified that he has two "residences."

[4] *See* [ECF 58-1] at 5 (Rhines' affidavit dated 9/21/2021); *see also* [ECF 11-2] at 9 (signed 6/20/2020 contract between Rhines and Jackson for the sale of Rhines' interest in Thirteen Restaurant identifies Rhines' address as "1300 Valley Trail, Whites Creek, TN 37189"); *id.* at 15 (8/22/2020 cover sheet for Rhines' and Romeo's federal and Tennessee tax forms, prepared by Jackson in his capacity as a Certified Public Accountant, and addressed to Rhines and Romeo at their White's Creek, Tennessee address).

[5] [ECF 58-1] at 5.

[6] *See* Ex. 2 from Dec. 17, 2021 hearing at 2 (excerpt of AT&T bill for wireless services from 9/4/2021-10/03/2021 relating to Tennessee phone number issued to Rhines). The Court takes judicial notice under Rule 201 of the Federal Rules of Evidence that area code (615) is associated with Tennessee. *See* https://www.allareacodes.com/615 (last visited Oct. 15, 2021).

[7] Rhines testified that he has never paid taxes in the Virgin Islands.

[8] *See* Ex. 4 from Dec. 17, 2021 hearing (Tennessee Division of Business Services form regarding "Acts Talent Agency LLC," a limited liability company formed by Rhines on 6/18/2021).

*Rhines v. Jackson*
Civil No. 2020-68
Page 6

In support of his contention that he is a citizen of the Virgin Islands, in addition to investing in a business,[9] Rhines points to a lease he signed in 2019 for an apartment located adjacent to the restaurant he owned and was planning to operate. In addition, Rhines secured accounts with a St. Thomas utility provider, as well as a St. Thomas cable and internet provider for the apartment.[10] He also testified that he keeps a car on St. Thomas, and he maintains a St. Thomas phone number.[11] Further, Rhines testified that he opened a bank account at First Bank on St. Thomas. Finally, Rhines testified about an application he submitted for a Virgin Islands firearms license.[12] In the sworn application, which was dated August 10, 2020—just days after this case was filed—Rhines listed his Tennessee phone number and gave the address of the restaurant as his residence instead of the address of the apartment. In fact, at the time he completed that form, he had already sold his interest in the restaurant several months earlier.

---

[9] *See* [ECF 11-2] at 9 (signed 6/20/2020 contract between Rhines and Jackson for the sale of Rhines' interest in Thirteen Restaurant); [ECF 58-1] at 8 (signed 4/7/2020 "Request for Taxpayer Identification Number and Certification" Form W-9 in which Rhines identifies himself as the sole owner of Thirteen Restaurant on St. Thomas); *id.* at 9 (signed 5/30/2020 contract between Rhines and Jackson wherein each is identified as a co-owner of Thirteen Restaurant).

[10] *See* Ex. 1 from Dec. 17, 2021 hearing (signed 11/21/2019 lease between Rhines and Omar Brown, Jr. for monthly lease of St. Thomas apartment from 12/1/2019-12/1/2020). Rhines testified that he understood the restaurant would be paying the rent for the apartment. *See also* [ECF 16-1] at 2 (11/22/2019 Virgin Islands Water and Power Authority invoice for initial deposit for service to St. Thomas apartment listing Rhines as the customer); *but see id.* at 3 (signed 11/22/2019 customer service contract between Virgin Islands Water and Power Authority and Rhines for service to St. Thomas apartment, showing Rhines' address as being in Tennessee). *See also* [ECF 16-3] at 1-3 (12/5/2019 St. Thomas telecommunications provider VIYA new residential service application signed by Rhines for installation on St. Thomas).

[11] *See* [ECF 58-6] at 3 (AT&T payment history for wireless services from 9/4/2021-10/03/2021 relating to a St. Thomas phone number issued to Rhines' wife, Lisa Romeo). The Court takes judicial notice under Rule 201 of the Federal Rules of Evidence that area code (340) is associated with the U.S. Virgin Islands. *See* https://www.allareacodes.com/340 (last visited Oct. 15, 2021). The payment history does not indicate an address where the bill is received.

[12] *See* Ex. 7 from Dec. 17, 2021 hearing (Notarized Virgin Islands Police Department Firearms Application dated 8/10/2020).

Prior to the hearing in December 2021, Rhines and his wife, Lisa Romeo, submitted affidavits purporting to demonstrate their intention to remain on St. Thomas. For example, Rhines states: "My intent is to be domiciled on St. Thomas . . . ." [ECF 58-1] at 5 (9/21/2021 Rhines affidavit). According to Rhines, he and his wife intend to split their time between their St. Thomas and Tennessee residences, "with St. Thomas being [their] permanent home." *Id.* To that end, Rhines further states that he and his wife had "intended to purchase real property in the territory" with the proceeds of the sale of the restaurant to Jackson. *Id.* at 5-6. Lastly, Rhines avers that he intends to acquire additional businesses on St. Thomas and provides evidence of this intent in the form of an October 9, 2020 email he sent to "steve@sunrisemanagment.net" regarding his interest in speaking with potential investors about various St. Thomas properties. *See* [ECF 58-7] at 2-4.

In her affidavit, Romeo makes similar statements regarding the couple's intent to be domiciled on St. Thomas. For example, she recalls that in 2019, while the couple were living in Tennessee, they decided to purchase a restaurant in St. Thomas so that they could realize their "dream of becoming snowbirds." [ECF 58-2] at 2 (9/21/2021 Romeo affidavit). Romeo explains:

> My husband partnered with his long-time friend and accountant, Eddie Jackson, to invest in the restaurant/bar. My husband would move to the islands and run the business as its general manager. This partnership was intended to eventually expand to include several businesses within the territory. We would relocate to the warmer climate of St. Thomas, making our permanent home on island to enjoy our twilight years in paradise.

*Id.* According to Romeo, she and Rhines intend to be domiciled on St. Thomas, intend to acquire real estate on St. Thomas, and intend to split their time between Tennessee and the Virgin Islands. *Id.* at 4.

These subjective affidavits were undercut, however, by the testimony elicited at the December 17, 2021 hearing. For example, Jackson testified that that Rhines said "he would go

back and forth" between St. Thomas and Tennessee. Jackson also said that in May of 2020, Rhines said his intent was to return to Tennessee, because he was concerned "he would probably never leave the island alive." Further, Wilson, who worked to prepare the restaurant for its relaunch under their ownership, testified that he spent a great deal of time on site from 2019 through late 2020, and that Rhines was not around very much. He further testified that he helped Rhines move into the apartment in December 2019, and that by May of 2020, when Wilson was staying at the apartment for several weeks, he noticed that most of Rhines' belongings were still in the suitcases that they had moved together. Finally, Wilson testified that he did not recall seeing Romeo at either the apartment or the restaurant.

Considering all the evidence the parties presented in writing and at the hearing, the Court concludes that Rhines has not met his burden to demonstrate by a preponderance of the evidence that he changed his domicile from Tennessee to the Virgin Islands. The Court accepts at face value the declarations of both Rhines and his wife that they intended to split their time between the two locations, and to become "snowbirds." However, the Court simply cannot find that—contrary to Rhines' self-serving statements of future intent—the Virgin Islands was "the center of [his] business, domestic, social and civic life,"[13] at the time the complaint was filed. Further, given the presumption favoring established domiciles over new ones,[14] the Court finds that Rhines was a citizen of Tennessee—his long-established domicile—rather than a citizen of the Virgin Islands when he filed the original complaint. Thus, this Court lacks diversity jurisdiction.

### IV. CONCLUSION

Accordingly, the premises considered, IT IS ORDERED:

---

[13] *Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2008).

[14] *McCann v. Newman Irrevocable Tr.*, 458 F.3d at 286-87.

*Rhines v. Jackson*
Civil No. 2020-68
Page 9

      (1) The motion to dismiss is GRANTED.

      (2) The motion for leave to file a counterclaim [ECF 36] is MOOT.

      (3) The Clerk of Court shall CLOSE this case.

**Dated:** February 7, 2022                  S\_____
                                                                **RUTH MILLER**
                                                                United States Magistrate Judge